IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HOPE E. LEE-THOMAS             :
                               :
   v.                          :   Civil Action No. DKC 15-2010
                               :
PRINCE GEORGE'S COUNTY PUBLIC  :
SCHOOLS, et al.                :

**MEMORANDUM OPINION**

Presently pending and ready for resolution is the motion for summary judgment filed by Defendant Board of Education of Prince George's County ("Defendant" or "the Board"). (ECF No. 41). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for summary judgment will be denied.

I. Background[1]

A. Factual Background

Plaintiff Hope E. Lee-Thomas ("Plaintiff") suffers from a hearing impairment, chronic vertigo, and carpal tunnel syndrome. (ECF No. 41-2, at 23, 25). She has been a Paraprofessional at Andrew Jackson Academy, a school in the Prince George's County Public Schools system ("PGCPS"), since March 25, 2014. (ECF No. 41-8, at 1-2). Prior to her current placement, Plaintiff had

---

[1] Unless otherwise noted, the facts outlined here are undisputed and construed in the light most favorable to Plaintiff.

worked for Defendant at other PGCPS schools and had previously notified Defendant of her need for accommodations for her disabilities. (ECF No. 43, at 3).

On May 19, 2014, Plaintiff filed a formal request for a disability accommodation. (ECF No. 41-2, at 21-24). These requests are referred to as "4172" requests within PGCPS because the Board's processes related to disability accommodations are described in a formal policy called Administrative Procedure 4172. (*See id.* at 14). In her 4172 request, Plaintiff asked for: (1) an upright support chair, (2) handrails in both adult bathrooms, (3) an amplified, flashing telephone in her classroom, (4) a portable loop system in her classroom, (5) a portable loop system in the multi-purpose room, and (6) an American Sign Language ("ASL") interpreter or a Communications Access Realtime Translation ("CART") system for any meetings, programs, or workshops held outside of these two rooms. (*Id.* at 21). On May 30, Elizabeth Davis, PGCPS's Equal Employment Opportunity ("EEO") Compliance Officer, responded by including Plaintiff on an email to another PGCPS employee asking him to set a time to "fit" her for an ergonomic chair. (ECF No. 43-1, at 40). Defendant did not contact Plaintiff about any of the other requested accommodations before the end of the school year on June 18. (ECF Nos. 41-2, at 37; 43, at 4; 44-1, at 3).

In the absence of any further information about her requested accommodations, Plaintiff submitted a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was received on July 16. (ECF No. 41-3). That same month, Amana Simmons had taken over as the EEO Compliance Officer for PGCPS. (ECF No. 41-2, at 1). On the same day that Plaintiff filed her EEOC charge, Ms. Simmons contacted Plaintiff to determine whether she had received the accommodations she sought in her 4172 request. (*Id.* at 3). Plaintiff notified Ms. Simmons of her pending EEOC charge, and no further action was taken during the summer vacation to provide Plaintiff with the requested accommodations. (*Id.*).

When she returned to work for the new school year on August 18, Plaintiff contacted Ms. Simmons about her 4172 request. When Ms. Simmons attempted to set up a meeting, Plaintiff refused to meet without her union representative, who was out of town for the week. (*Id.*). The next day, Plaintiff notified Ms. Simmons that she was having trouble understanding the material presented during a Professional Development workshop held in the multi-purpose room, which had not been outfitted with a portable loop system as Plaintiff had requested. (*Id.* at 3-4). Defendant had provided two ASL interpreters for the workshop. Plaintiff, however, is not fluent in ASL and relies on reading the lips of interpreters, and the interpreters at the training

3

were not mouthing the words. (*Id.* at 4). When no ASL interpreter was present at a training on August 20, Plaintiff's principal, Veronica Richardson, allowed her to leave the training. (*Id.* at 30-36).

In an email dated August 21, Ms. Simmons told Plaintiff that she had obtained Plaintiff's classroom assignment from Dr. Richardson, and that: (1) a portable loop system would be installed in her classroom, (2) Dr. Richardson had relieved her of the obligation to attend meetings in the multi-purpose room, (3) a technology support employee would ensure that her telephone had blinking lights, (4) there was already a handrail installed in the bathroom closest to her classroom, (5) Ms. Simmons was submitting a work order to have a handrail installed in one of the bathrooms in the office, and (6) they were still determining the status and location of the ergonomic chair that Plaintiff had been fitted for in May. (*Id.* at 31). Plaintiff and Ms. Simmons met to follow up on these accommodations on September 4. (*Id.* at 38). At the meeting, Ms. Simmons confirmed that there was a blinking light on Plaintiff's telephone, that the portable loop system would be installed in her classroom, and that a new ergonomic chair would be ordered and delivered. Although a handrail had already been installed in the women's faculty bathroom, Ms. Simmons agreed that Defendant would install a handrail in the men's faculty bathroom

4

"in the event that she needs to use the men's restroom." Plaintiff's requests to have a loop system installed in the multipurpose room or to use CART were still "being evaluated" after the meeting. (*Id.*). On September 9, the loop system was installed in Plaintiff's classroom. (*Id.* at 39). On November 21, she received the ergonomic chair. (ECF No. 43-2, at 3).

On January 29, 2015, the EEOC issued Plaintiff a right to sue notice on her 2014 charge. (ECF No. 41-4). On February 27, Plaintiff filed an updated charge with the EEOC. (ECF No. 41-5). Where her 2014 charge complained only about her requests for a portable loop system and an amplified, flashing-light telephone (ECF No. 41-3), Plaintiff's 2015 charge also included her requests for handrails, an upright chair, an ASL interpreter, CART, and a portable loop system for the multi-purpose room (ECF No. 41-5). The EEOC responded by reopening its investigation and revoking its right to sue notice. (ECF No. 41-6). On April 20, the EEOC issued a right to sue notice for Plaintiff's updated charge. (ECF No. 41-7).

In May 2015, Ms. Simmons and Plaintiff again began to discuss the Board's responses to Plaintiff's requests for accommodation. (ECF No. 41-2, at 5, 40). As part of these discussions, Ms. Simmons told Plaintiff that the school's building engineers had advised her that it was not feasible to install a portable loop system in the multi-purpose room. (*Id.*

at 42). Instead, ASL interpreters would be provided if and when Plaintiff "desire[d] to attend special programs or other meetings" in that room. (*Id.*). Ms. Simmons further stated that CART was still being evaluated. (*Id.*). Plaintiff met with Ms. Simmons again on June 16 and recapped these issues before the summer break. (*Id.* at 6-7).

### B. Procedural Background

Plaintiff filed her complaint in this court on July 9, 2015, alleging violations of the Rehabilitation Act, 29 U.S.C. § 791, *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. (ECF No. 1 ¶¶ 14-17). Defendant filed a motion to dismiss on October 26. (ECF No. 13). Plaintiff responded and filed an amended complaint. (ECF Nos. 16; 16-1; 20). Defendant consented to Plaintiff amending her complaint, withdrew its motion to dismiss, and filed its answer on December 7. (ECF Nos. 17; 18). After discovery, Defendant filed the instant motion for summary judgment. (ECF No. 41). Plaintiff responded (ECF No. 43), and Defendant replied (ECF No. 44).

## II. Standard of Review

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 249. In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)); *see also EEOC v. Navy Fed. Credit Union,* 424 F.3d 397, 405 (4th Cir. 2005), but a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences," *Shin v. Shalala,* 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted).

To prevail on a motion for summary judgment, the moving party generally bears the burden of showing that there is no genuine dispute as to any material fact. No genuine dispute of material fact exists, however, if the nonmoving party fails to make a sufficient showing on an essential element of his case as to which he would have the burden of proof. *Celotex*, 477 U.S. at 322–23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his responsibility to confront the summary judgment motion with an "affidavit or other

7

evidentiary showing" demonstrating that there is a genuine issue for trial. *See Ross v. Early*, 899 F.Supp.2d 415, 420 (D.Md. 2012), *aff'd*, 746 F.3d 546 (4th Cir. 2014).

**III. Analysis**

**A. Claims in Plaintiff's Complaint**

Plaintiff's original complaint was filed in July 2015, before the start of the 2015-16 school year, and only alleged violations as of that date. Plaintiff's amended complaint, filed in December 2015, makes no reference to any events that occurred after her original complaint was filed. (*See* ECF No. 20).[2] Despite the temporal limits of Plaintiff's complaints, the parties have provided evidence and substantial argument on events that occurred during the 2015-16 and 2016-17 school years. It is well established that a plaintiff "is bound by the allegations contained in [her] complaint and cannot, through the use of motion briefs, amend the complaint." *Zachair, Ltd. V. Driggs*, 965 F.Supp. 741, 748 n.4 (D.Md. 1997) *aff'd*, 141 F.3d 1162 (4th Cir. 1998) (unpublished table opinion). Rather, "[u]nder Fed.R.Civ.P. 15(d), a plaintiff must move the court for leave to file a supplemental pleading setting forth occurrences which happen[] after" the suit is brought. *Skipper v. Giant*

---

[2] Plaintiff's amended complaint also appears to have been prompted by Defendant's motion to dismiss on *res judicata* grounds. (*See* ECF Nos. 13; 16). If anything, then, Plaintiff's amended complaint sought to narrow, rather than to expand, the timeframe of her allegations.

8

*Food, Inc.*, 187 F.Supp.2d 490, 493 n.2 (D.Md. 2002) (citing *Young-Henderson v. Spartanburg Area Mental Health Ctr.*, 945 F.2d 770, 775 (4th Cir. 1991)). Accordingly, events occurring after July 9, 2015, are not properly before the court, and will not be considered in adjudicating the pending motion.

Similarly, Plaintiff's arguments related to static from the portable loop system in her 2014-15 classroom have not been properly pleaded. In her amended complaint, Plaintiff identifies the need for handrails, an upright chair, an ASL interpreter, an amplified telephone, and a portable loop system for the multi-purpose room, but omits any mention of issues with the loop system in her classroom. (ECF No. 20 ¶ 11). Moreover, in both her original complaint and her updated EEOC charge, Plaintiff specifically stated that Defendant had accommodated her disability in the classroom, without mention of any issues with the loop system in that room. (ECF Nos. 1 ¶ 9; 41-5, at 1). Because Plaintiff's allegations as to the effectiveness of the loop system in her classroom were not included in the complaint, arguments related to that system also will not be considered.

**B. Failure to Accommodate**

Plaintiff brings two claims, one for violation of Section 501 of the Rehabilitation Act and one for violation of the ADA.

(ECF No. 20 ¶¶ 16-24).[3] The ADA prohibits discrimination against "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). One form of discrimination is "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual." 42 U.S.C. § 12112(b)(5)(A). To establish a *prima facie* case for a failure-to-accommodate claim, a plaintiff must show "that (1) she qualifies as an 'individual with a disability' . . . ; (2) the [defendant] had notice of her disability; (3) she could perform the essential functions of her job with a reasonable accommodation; and (4) the [defendant] refused to make any reasonable accommodation." *Reyazzudin v. Montgomery Cty., Md.*, 789 F.3d 407, 414 (4th Cir. 2015) (citing 29 U.S.C. § 794(a); *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013)).

---

[3] The standards used to evaluate claims brought under the Rehabilitation Act are the same as those brought under the ADA. 29 U.S.C. § 794(d) ("The standards used to determine whether this section [of the Rehabilitation Act] has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990."); *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1264 n.9 (4th Cir. 1995) ("Because the language of the two statutes is substantially the same, we apply the same analysis to both."). There are "three distinct grounds for relief: (1) intentional discrimination or disparate treatment; (2) disparate impact; and (3) failure to make reasonable accommodations." *A Helping Hand, LLC v. Balt. Cty., Md.*, 515 F.3d 356, 362 (4th Cir. 2008). Plaintiff brings her claims for a failure to accommodate.

Defendant disputes only the fourth element, whether it provided Plaintiff a reasonable accommodation. As to a reasonable accommodation, the House Report on the matter states:

> [T]he reasonable accommodation requirement is best understood as a process in which barriers to a particular individual's equal employment opportunity are removed. The accommodation process focuses on the needs of a particular individual in relation to problems in performance of a particular job because of a physical or mental impairment.
>
> . . .
>
> Having identified one or more possible accommodations, the [next] step is to assess the reasonableness of each in terms of effectiveness and equal opportunity. A reasonable accommodation should be effective for the employee. Factors to be considered include the reliability of the accommodation and whether it can be provided in a timely manner.
>
> . . . [A] reasonable accommodation should provide a meaningful equal employment opportunity. Meaningful equal employment opportunity means an opportunity to attain the same level of performance as is available to nondisabled employees having similar skills and abilities.

H.R. Rep. 101-485(II), *as quoted in Bryant v. Better Business Bureau of Greater Md., Inc.*, 923 F.Supp. 720, 736-37 (D.Md. 1996). Accordingly, "[i]n order to be reasonable, the accommodation must be effective (i.e., it must address the job-related difficulties presented by the employee's disability), and it must allow the employee to attain an 'equal' level of

11

achievement, opportunity, and participation that a non-disabled individual in the same position would be able to achieve." *Merrill v. McCarthy*, 184 F.Supp.3d 221, 236 (E.D.N.C. 2016) (quoting *Fleetwood v. Harford Sys. Inc.*, 380 F.Supp.2d 688, 699 (D.Md. 2005)); *see also Bryant*, 923 F.Supp. at 736; 29 C.F.R. pt. 1630, app. § 1630.9 (2014) ("The reasonable accommodation that is required by this part should provide the individual with a disability with an equal employment opportunity. Equal employment opportunity means an opportunity to attain the same level of performance, or to enjoy the same level of benefits and privileges of employment as are available to the average similarly situated employee without a disability.").

On the other hand, an employer "may reasonably accommodate an employee without providing the exact accommodation that the employee requested." *Reyazuddin*, 789 F.3d at 415. The accommodation chosen by the employer need not be the "'best' accommodation possible, so long as it is sufficient to meet the job-related needs of the individual being accommodated." 29 C.F.R. §1630.9 app.; *see also Corrigan v. Perry*, 139 F.3d 888 (4th Cir. 1998) (unpublished table opinion). Under the ADA, a reasonable accommodation may include "making existing facilities used by employees readily accessible to and usable by individuals with disabilities" or "job restructuring, part-time or modified work schedules, reassignment to a vacant position,

12

acquisition or modification of equipment or devices, [or] appropriate adjustment or modifications of examinations, training materials or policies." 42 U.S.C. § 12111(9). As noted above, the employer has the "ultimate discretion to choose between effective accommodations," *Reyazuddin*, 789 F.3d at 415-16, and a court goes too far when the effect of an injunction "would be to give preferential treatment to people with disabilities, rather than put them on equal footing as intended by Congress," *Pathways Psychological v. Town of Leonardtown, Md.*, 223 F.Supp.2d 699, 717 (D.Md. 2002). Generally, whether a provided accommodation constitutes a reasonable accommodation is a question of fact. *Pandazides v. Va. Bd. of Educ.*, 13 F.3d 823, 833 (4th Cir. 1994); *see also Reyazuddin*, 789 F.3d at 416 (citing *Pandazides*); *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 464 (4th Cir. 2012) (noting that the "determination of the reasonableness of a proposed modification is often fact-specific").

Defendant contends that it is entitled to summary judgment because it has provided Plaintiff with reasonable accommodations. (ECF No. 41-1, at 20). Specifically, it argues that it provided her with a portable loop system in the classroom where she worked, provided her an ergonomic chair, installed handrails in the bathroom closest to her classroom, provided Plaintiff with a flashing light telephone, relieved her

from any required meetings or duties in the multipurpose room, and offered to provide an ASL interpreter as needed for meetings or events that she sought to attend.

Plaintiff argues that Defendant has not provided her with reasonable accommodations. She contends that Defendant was required to provide a hearing accommodation for the multi-purpose room. (*Id.* at 12-13). Limiting her duties is insufficient, she maintains, because it marginalized her importance, distanced her from her peers, and prevented her from obtaining the information necessary to be involved in the administration of the school. (*Id.*; ECF No. 43-2, at 5). She argues that the flashing light phone was not a satisfactory accommodation because she could not see the blinking light if she were turned away from the phone. (*Id.* at 14). She also states that not enough of the restrooms had handrails installed, requiring her to use unsupported toilets on at least three occasions because the supported toilets were in use by other employees. (*Id.* at 14-15; ECF No 43-2, at 1-2). Finally, she argues that Defendant has repeatedly delayed in providing accommodations, forcing her to work without accommodations for long periods of time. (ECF No. 43, at 15-20). She did not receive her ergonomic chair, for instance, until November 21, 2014, more than six months after submitting her 4172 request on May 19.

Several of Defendant's arguments rely on the theory that Plaintiff's "self-serving affidavit" is insufficient to create a dispute of fact at the summary judgment stage. (ECF No. 44, at 5, 7, 18-19). Defendant overstates the limitation on self-serving affidavits. Courts have found such affidavits inadequate where there is powerful documentary evidence that contradicts the affidavit, *see Jeandron v. Bd. of Regents of Univ. of Md.*, 510 F.App'x 223, 228 (4th Cir. 2013), where they provide only conclusory opinions uncorroborated by factual allegations, *see Williams v. Giant Food Inc.*, 370 F.3d 423, 433 (4th Cir. 2000), or where a Plaintiff contradicts his own sworn statements, *see Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, 28 F.Supp.3d 465, 484 n.6 (D.Md. 2014) (citing cases describing the "sham affidavit" rule). The general rule, however, remains that a court should not weigh the credibility of testimony of one party against the testimony of another at the summary judgment stage, even if it is self-serving. *See Harris v. Mayor & City Council of Balt.*, 429 F.App'x 195, 198 n.5 (4th Cir. 2011) (refuting the notion that self-serving affidavits are insufficient to defeat a motion for summary judgment so long as the affidavit complies with the requirements of Fed.R.Civ.P. 56 and does not contradict one's prior testimony); *Pitter v. Cmty. Imaging Partners, Inc.*, 735 F.Supp.2d 379, 391 (D.Md. 2010). Therefore, Plaintiff's affidavit must be considered.

Here, Defendant has clearly provided Plaintiff with several modifications, but a question remains whether these modifications are reasonable accommodations. Some of the differences between what Plaintiff received and what she asked for – for example, handrails in one bathroom instead of two, a phone with only a flashing light as opposed to a flashing light and an amplifier, her chair being provided, but only after two fittings and many months of waiting - seem minor. A factfinder, however, must decide whether these accommodations removed the barriers to equal employment opportunity in a timely manner.[4] A question also remains as to whether relieving Plaintiff from duties in the multi-purpose room was a reasonable accommodation

---

[4] ADA regulations provide that the employee and employer should engage in "an informal, interactive process" in order to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). The parties must act in good faith in the interactive process. *Jacobs v. N.C. Admin. Office of Courts*, 780 F.3d 562, 581 (4th Cir. 2015). "A party that obstructs or delays the interactive process is not acting in good faith." *Allen v. City of Raleigh*, 140 F.Supp.3d 470, 485 (W.D.N.C. 2015) (quoting *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F.App'x 314, 323 (4th Cir. 2011)). An employer cannot be found liable solely for a failure to engage in the interactive process where it has provided a reasonable accommodation. *Walter v. United Airlines, Inc.*, 232 F.3d 892 (4th Cir. 2000) (unpublished table opinion) (citing *Rehling v. City of Chi.*, 207 F.3d 1009, 1016 (7th Cir. 2000)). It is inherent in the good-faith requirement, however, that the interactive process may not be delayed unreasonably and without progress, especially where, as with Plaintiff's chair here, the parties readily identified and agreed to the appropriate accommodation, but Defendant delayed in providing it. To do so may have been a failure to accommodate, if only for a limited period of time.

that would allow her to attain "an 'equal' level of achievement, opportunity, and participation that a non-disabled individual in the same position would be able to achieve."[5] Accordingly, the jury must decide whether the accommodations Defendant provided constitute a reasonable accommodation, and Defendant's motion for summary judgment will be denied.

## IV. Conclusion

For the foregoing reasons, the motion for summary judgment filed by Defendant Board of Education of Prince George's County will be denied. A separate order will follow.

/s/<br>
DEBORAH K. CHASANOW<br>
United States District Judge

---

[5] Defendant also avers that it offered ASL interpreters for any programs or meetings upon request, but Plaintiff never made such a request, which constitutes bad faith by Plaintiff in the interactive process. (ECF No. 41-1, at 18). "'If an employer engages in the interactive process with the employee in good faith, for the purpose of discussing alternative reasonable accommodations, but the employee fails to cooperate in the process, then the employer cannot be held liable under the ADA for failure to provide reasonable accommodations.'" *Allen*, 140 F.Supp.3d at 483 (quoting *EEOC v. Kohl's Dep't Stores, Inc.*, 774 F.3d 127, 132 (1st Cir. 2014)). Although Plaintiff clearly preferred the installation of a loop system or the provision of a CART system, she does not argue that an ASL interpreter who mouthed the words would have been ineffective. However, it is unclear whether Defendant provided Plaintiff with this option throughout the 2014-15 school year. (*See* ECF No. 41-1, at 18 ("Following the June 16, 2015 interactive meeting . . . , Plaintiff had failed to cooperate with Ms. Simmons' prior requests to provide dates, times, and locations of PGCPS events that Plaintiff wished to attend.")). Accordingly, summary judgment is not appropriate on the current record.